ed his views of the duties and powers of a jury, the importance of this case affecting the safety of life and property at sea, and the necessity for a verdict. He therefore refused to discharge them, and sent them back to their room.

The case was given to the jury on Wednesday. After being locked up all night, they came into court at noon on Thursday, and announced that they were unable to agree upon a verdict. CADWALADER, District Judge, after listening to their agreement to disagree, sent them back to their room, where they remained until the scene in court this morning narrated above.

One of the jurors is quite ill. He was sick all night, and is reported to be no better to-day. This afternoon, between 1 and 2 o'clock, the jury came into court, and stated that after an honest and laborious effort, they found themselves still unable to agree upon a verdict. There were conscientious differences upon questions of fact, which the members could not relinquish unless compelled to. A verdict from their own voluntary conviction was impossible; therefore, as they understood the powers and duties of a jury, they could not agree except under a binding instruction from the court, to which they would be bound to yield.

CADWALADER, District Judge, said that, under the evidence, he thought it the duty of the jury to convict the defendant. They could not do otherwise, unless they found that at the time of the occurrence charged as mutiny, the captain of the brig was incapable of navigating the vessel, because he was so intoxicated as to be irrational, and of this he saw no evidence in the case. In criminal cases the jury had the power to decide questions of law and fact, but always in conformity with the law and legal evidence, and they had no right to give an arbitrary decision of any question. To find that on this occasion the captain was incapable from drunkenness from navigating the vessel would be extremely arbitrary. He was willing to assume as much responsibility in this case as the law would permit, and therefore would accept the verdict of guilty, accompanied by a declaration that but for the further instruction of the court the jury would not have agreed upon a verdict. Such a verdict was accordingly rendered, coupled with a recommendation to mercy.

The defendant was permitted to depart on his own bail, the judge saying that the importance of the case had led him to the course he had pursued, and he was not only willing, but anxious, to hear an argument for a new trial, and correct whatever error he may have committed.

The jury, which consisted of eleven members, stood on Wednesday and Thursday six for conviction to five for acquittal; yesterday seven for conviction to four for acquittal; this morning nine for conviction to two for acquittal; and from noon until they finally came into court ten for conviction to one for acquittal.

---

WILTBERGER (UNITED STATES v.).
See Case No. 16,738.

## Case No. 17,856.

### WILTON v. RAILROAD CO.

[2 Whart. Dig. 408–410.]

Circuit Court, E. D. Pennsylvania.  Dec., 1848.

PATENTS — ELEMENTS OF INVENTION — SPECIFICATIONS—DRAWINGS—FAILURE TO APPLY FOR PATENT FOR 18 MONTHS.

[1. The principle or essential character of an invention involves two elements: (1) The object attained; (2) the means by which it is obtained, and that, if either of these be new, it may be the subject of a patent.]

[2. Drawings annexed to a patent issued under the act of 1837 (5 Stat. 191) form no part of the specification, where no drawings were annexed to the original patent.]

[3. An inventor who does not reduce his invention to practice, or apply for a patent till after 18 months, others in the meantime having invented the same thing, and reduced it to practice, cannot recover for a breach of his patent.]

[Cited in 2 Whart. Dig. 408–410, to the points above stated. Nowhere reported; opinion not now accessible.]

## Case No. 17,857.

### WILTON v. RAILROADS.

[1 Wall. Jr. 192.] [1]

Circuit Court, E. D. Pennsylvania.  Oct. 21, 1847.

EVIDENCE UNDER PATENT ACT—PRACTICE.

The 15th section of the act of congress of July 4, 1836 [5 Stat. 123], commonly called the "Patent Act," does not require notice of the names and places of residence of the witnesses, by whom it is intended to prove a prior knowledge and use of the thing patented.

[Cited in Woodbury Patent Planing Mach. Co. v. Keith, Case No. 17,970; Agawam Woolen Co. v. Jordan, 7 Wall. (74 U. S.) 596.]

In this suit, which was one for an infringement of a patent right, the defendants pleaded the general issue; and, relying in their defence upon a previous use and knowledge of the thing patented, gave notice to the plaintiffs under the act of congress,[2] that they would offer proof upon the trial that it had been publickly used at certain places which they named, and that a prior knowledge of it was possessed by certain persons, whom, together with their places of residence, they also named. But the notice did not specify the names nor residences of the witnesses by whom it was intended to prove what was thus notified. The act of congress of July 4, 1836 (section 15), which allows this defence and notice, says: "Whenever the defendant relies in his defence on the fact of a previous invention, knowledge, or use of the thing patented, he shall state in his notice of special matter the names and places

---

[1] [Reported by John William Wallace, Esq.]

[2] Of July 4, 1836, § 15 (5 Stat. 123), that the defendant shall be permitted to plead the general issue, and to give any special matter in evidence of which notice in writing may have been given thirty days before the trial, tending to prove that the thing patented had been in publick use, &c.